IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-499-BO

| | |
|---|---|
| CHANIELLE L. WOODFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| MERRICK B. GARLAND, ET AL., ) | |
| ) | |
| Defendants. ) | |

This cause comes before the Court on defendants' motion for summary judgment. [DE 70]. The matter has been fully briefed. A hearing on defendants' motion was held before the undersigned on September 25, 2024, at Raleigh, North Carolina. [DE 89]. In this posture, the matter is ripe for disposition. For the reasons discussed below, defendant's motion for summary judgment [DE 70] is DENIED.

BACKGROUND

In August 2009, plaintiff began working as a Corrections Officer for the Bureau of Prisons ("BOP"). [DE 52, 71]. It is undisputed that in early 2014, plaintiff transferred to the Federal Correctional Institution II in Butner, North Carolina ("FCI Butner II"). [DE 72, 82]. It is also undisputed that when plaintiff transferred to FCI Butner II, Captain Reginald White served as plaintiff's supervisor. [DE 72, 82].

Plaintiff contends that in the spring of 2016, "Captain Reginald White, . . . sexually assaulted her and started sexually harassing her." [DE 52, 81 at 3]. The initial incident occurred in the staff lounge at FCI Butner II. [DE 81]. Plaintiff alleges that when she entered the lounge,

"Captain Wright walked in, grabbed her, pinned her against the wall" and assaulted her by "grabbing her breasts and between her legs, and trying to kiss her." [DE 81]. Plaintiff contends that the sexual harassment and abuse continued over the following years and culminated in the summer of 2018. [DE 81]. During that time, Captain Wright attempted to pull plaintiff into his office. [DE 81]. Plaintiff asserts that during this incident, she "fought back and yelled at [Captain Wright] to stop." [DE 81]. And although the threat from Captain Wright ceased following this confrontation, plaintiff contends that a new threat ensued when Lieutenants close to Captain Wright began to harass plaintiff. [DE 81]. According to plaintiff, these incidents of harassment included "downgrad[ing] her evaluations," "admonish[ing] her for an outfit she was wearing," and "improperly remov[ing]" plaintiff from her assignment. [DE 81 at 4].

Plaintiff contends that the harassment peaked in February 2019 when, after undisputedly being late to work on two occasions, plaintiff was "referred for discipline." [DE 81 at 4, 82]. On February 12, 2019, plaintiff "contacted the EEO Office" to file a complaint regarding the series of events at FCI Butner II. [DE 81]. However, plaintiff alleges that Captain Wright talked her out of filing any charges. [DE 81]. Thereafter, plaintiff contends that the retaliation and harassment against her only increased. [DE 81]. Specifically, plaintiff contends that a Lieutenant "discipline[d]" her for "refus[ing] to work overtime" and "referred her to internal affairs." [DE 81].

It is undisputed that in April 2019, plaintiff submitted a formal Charge of Discrimination with the EEO office. [DE 82]. Plaintiff alleges that she did not include the sexual harassment allegations in this claim out of "fear of increased harassment and retaliation, and fear for her job." [DE 81]. Plaintiff contends that she continued to amend her EEO complaint over the following months. [DE 81].

Plaintiff further alleges that in late spring 2019, she submitted an FMLA request in which she informed the BOP that "due to a serious health condition, she could only work 8 hours a day." [DE 81]. It is undisputed that plaintiff's FMLA request was approved in June 2019. [DE 72, 82]. Nonetheless, plaintiff contends that her supervisor, Captain Wright and Lieutenant Miller, continued to assign her to overtime shifts, and "then referred her for discipline[] when she refused to" work overtime. [DE 81].

It is undisputed that in October 2019, plaintiff made her first written complaint to BOP in which she alleged claims of sexual assault. [DE 72, 82]. It is further undisputed that in October 2019, following plaintiff's lodging of the sexual assault claims, plaintiff was temporarily transferred to FCI Butner I. [DE 82]. It is also undisputed that plaintiff's transfer to FCI Butner I became permanent in April 2020. [DE 72, 82]. However, plaintiff contends that the harassment against her continued both before and after she transferred to FCI Butner I. [DE 81]. In support of her claim, plaintiff alleges various multi-day suspensions, and instances of failure to promote. [DE 81]. It is undisputed that plaintiff was, however, ultimately promoted in July 2022. [DE 72, 82].

In September 2020, following the exhaustion of her administrative remedies, plaintiff filed the instant action. [DE 1]. In April 2023, plaintiff filed an amended complaint alleging that defendants committed adverse actions against plaintiff in retaliation for plaintiff's formal and informal complaints in which she alleges sexual harassment and abuse in the workplace. [DE 52]. Following the discovery period, defendant moved for summary judgment. [DE 70]. Plaintiff responded in opposition. [DE 81].

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The

3
Case 5:20-cv-00499-BO    Document 90    Filed 11/01/24    Page 3 of 7

moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). In determining whether a genuine issue of material fact exists, a court must view the evidence and inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). And "in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility." *Angelini v. Balt. Police Dep't*, 464 F. Supp. 3d 756, 776 (D. Md. 2020).

In her amended complaint, plaintiff asserts only one cause of action: retaliation under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000 *et seq.*), as amended. [DE 52]. A plaintiff may prove retaliation either through direct evidence—the traditional approach—or through the burden-shifting *McDonnell Douglas* framework. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). To establish a Title VII retaliation claim under the *McDonnell Douglas* framework, plaintiff must demonstrate that "(1) [s]he engaged in a protected activity; (2) h[er] employer took adverse action against him, and (3) a causal relationship existed between the two events." *Ofoche v. Apogee Med. Grp., Virginia, P.C.*, 815 Fed. App'x 690, 693 (4th Cir. 2020). *See also EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005). "[T]he passage of time alone

cannot provide proof of causation unless the 'temporal proximity between an employer's knowledge of protected activity and an adverse employment action' was 'very close.'" *Pascual v. Lowe's Home Centers, Inc.*, 193 Fed. App'x 229, 233 (4th Cir. 2006) (quotations omitted). *See Perry v. Kappos*, 489 Fed. App'x 637, 643 (4th Cir. 2012) ("a three-month lapse is too long to establish causation, without more"). Even if, however, plaintiff establishes a *prima facie* case of retaliation, "the burden shifts to the defendant, who is obliged to articulate a legitimate, non-retaliatory justification for the adverse employment action." *Id.* at 405. If defendant does so, plaintiff must then show by a preponderance of the evidence that those reasons were, in fact, pretextual. *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004).

Critically, complaining about sexual harassment is considered to be a protected activity. *Kubicko v. Ogden Logistics Servs.*, 181 F.3d 544, 551–52 (4th Cir. 2015); *see also Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir.1998) (protected "activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities"). And for purposes of their motion, defendants concede that plaintiff's refusal of Captain Wright's alleged sexual advances constitutes a protected activity. [DE 71 at 13].

As to the second element, a materially adverse activity, the parties dispute whether some of the events constitute materially adverse actions. [DE 71, 82]. To prove an adverse action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," meaning it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (citations omitted). Importantly, in the retaliation context, the Supreme Court has defined "materially adverse" as causing "significant" harm. *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 976 (2024).

While defendants nonetheless concede that failure to promote and sustained discipline could constitute materially adverse actions, defendants further contend that negative performance evaluations, minor annoyances, snubbing, threat assessments, unsustained investigations, and improper mandates do not constitute materially adverse actions. [DE 71]. Based on the record before the Court and the arguments at the September 25, 2024, hearing, the Court concludes that there is a genuine issue of material fact as to whether each of the proposed events constitutes a materially adverse action in that plaintiff would have been "dissuaded . . . from making or supporting a charge of discrimination." *White*, 548 U.S. at 68 (2006). [DE 71, 81].

Turning to causation. In defendants' request for summary judgment, they contend that plaintiff cannot prove a causal link between the protected activity and a materially adverse action. [DE 71]. The Court disagrees and concludes that based on the evidence, there remains a genuine issue of material fact as to whether there is a causal nexus between plaintiff's undisputed protected activity and the alleged retaliation. [DE 71]. "Fourth Circuit precedent addressing the causation prong of a *prima facie* case of retaliation requires that a plaintiff demonstrate that the decisionmaker imposing the adverse action have actual knowledge of the protected activity." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 125 (4th Cir. 2021). Here, based on the timeline of events and various internal investigations, the Court concludes that there is a genuine issue of material fact as to whether many of the decision makers behind the adverse actions were aware of plaintiff's engagement in a protected activity.

In addition, assuming plaintiff establishes a *prima facie* case, the Court further finds that there are genuine issues of material fact as to whether plaintiff can overcome defendant's proposed legitimate, non-retaliatory reason for its adverse actions. For example, while defendant contends that plaintiff's employment record constituted the grounds for not promoting plaintiff, [DE 71],

the parties also explained at the September 25, 2024, hearing that the decision *not* to promote plaintiff was allegedly made by two Wardens who were aware of plaintiff's engagement in a protected activity; Warden Andrews, an employee who knew that plaintiff had engaged in protected activity, and Warden Lou, an employee who had disciplined plaintiff for seeking EEO assistance in the first instance. [DE 89]. Because the Court is faced with "conflicting evidence," it concludes that summary judgment is inappropriate at this stage of the proceedings. *Angelini*, 464 F.Supp.3d at 776.

In sum, there still remains a genuine issue of material fact as to whether plaintiff has established her *prima facie* case for retaliation, along with whether defendant had a legitimate, non-retaliatory reason for taking adverse action against plaintiff. Thus, defendant is not entitled to summary judgment at this stage of the proceedings, and the motion must be denied.

## CONCLUSION

For the above reasons, defendant's motion for summary judgment [DE 70] is DENIED. For those reasons outlined in [DE 87], namely that the documents the parties seek to seal contain personnel, investigative, and medical records, and as the public has had an opportunity to object and no objections have been filed, the motions to seal [DE 80 & DE 87] are GRANTED. However, the parties shall meet and confer regarding necessary redactions to their memorandums in support of or opposition to summary judgment, and file such redacted versions not later than November 25, 2024. Finally, the clerk is DIRECTED to refer this case for the scheduling of a pretrial conference.

SO ORDERED, this __3 1__ day of October 2024.

Terrence Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE